IRVING, J.,
for the Court:
¶ 1. This appeal is from an order of the Circuit Court of Hinds County affirming an order of the Workers’ Compensation Commission awarding the claimant, Willie Carl Caston, permanent partial disability benefits in the amount of $161.71 per week for a period of four hundred fifty weeks. The Commission reversed the administrative law judge who had determined that Caston was entitled to only $54.37 per week for four hundred fifty weeks. The employer, Tyson Foods, Inc., feeling aggrieved by the circuit court’s ruling, perfected this appeal in which it alleges (1) that the circuit court’s findings were against the substantial weight of the evidence and (2) that the measure of claimant’s loss of wage-earning capacity should have been based on claimant’s position as a security guard. Finding no reversible error, we affirm.
FACTS
¶ 2. Willie Carl Caston injured his back while working as a chopper for Tyson Foods. At the time of the injury, Tyson was earning an average weekly wage of $389.56. Dr. Lon Alexander diagnosed Caston’s injuries as major disc ruptures and a probable herniated disc. Dr. Alexander performed surgery on Caston and determined that Caston would more than likely have to undergo additional surgery and consider another occupation. However, Dr. Alexander referred Caston to Dr. Rahul Vohra for additional treatment and deferred to Dr. Vohra any opinion on final impairment and restrictions.
¶ 3. Dr. Vohra had initially treated Ca-ston before he sent Caston to Dr. Alexander for neurosurgical evaluation. Dr. Voh-ra treated Caston extensively, and allowed him to attempt light duty employment. Caston was prohibited from lifting more than 15 pounds, repetitive bending, stooping or twisting, and from standing more than four hours per day. Dr. Vohra later rescinded this decision and referred Ca-ston back to Dr. Alexander for evaluation of the probable herniated disc. Dr. Alexander recommended additional surgery but Caston refused.
¶ 4. Caston attempted to return to work with Tyson as a sorter in April 1997, when Dr. Vohra allowed him to attempt light duty work. He was unable to sustain this work. He later sought other employment in November 1997, but was unsuccessful. Tyson subsequently put Caston to work part-time in a sorter job paying $7.35 per hour and requiring Caston to work approximately twenty hours per week. Caston acknowledged that he was able to perform this job adequately despite persistent pain.
¶ 5. By January 16, 1998, Dr. Vohra concluded that Caston was at a point of maximum medical improvement. He rated Caston’s physical impairment as ten percent to the body as a whole. He also imposed physical restrictions on Caston which prohibited Caston from lifting more than 35 pounds, from repetitive bending or stooping, and from standing more than four hours per day. A subsequent functional capacity examination confirmed that Caston would be limited to fight and possibly some medium duty work.
*1054 ¶ 6. In early March 1998, on the eve of the hearing of this matter before the Commission, Tyson offered Caston a full time job as security guard. This job paid $308 per week based on a forty-hour week. According to Tyson, the requirements of this job were approved in advance by Dr. Voh-ra and fit well within the restrictions given to Caston.
¶ 7. The administrative law judge found that the security guard job was indicative of Caston’s earning capacity and concluded that Caston was capable of full time employment as a security guard. The administrative law judge determined that Caston’s claimed inability to perform the security guard work was not credible. The administrative law judge ordered Tyson to pay permanent partial disability benefits in the amount of $54.37 per week beginning January 16, 1998, and continuing for four hundred fifty weeks. The awarded benefits represented sixty-six and two third percent of the difference between Caston’s average weekly wage at the time of his injury ($389.56) and his average weekly wage for the security guard job ($308).
¶ 8. In its review of the evidence, however, the Commission found that significant questions were raised regarding the job of security officer. Principal among these questions was whether the job description provided to Dr. Vohra by Tyson was entirely accurate. In a memorandum to personnel in September 1997, Tyson informed its security guards of the following:
One guard will make rounds walking the premises for thirty minutes while another guard is stationed at the guard house for the same period; guards will rotate between walking and guard house duty every thirty minutes; the guard having duty at the guard house “will be required to stand” at all times and check vehicles entering the gate for appropriate identification.
¶ 9. Based on these requirements, the Commission found that the security guard job required standing in excess of the four hour per day restriction imposed by Dr. Vohra. The Commission further found that at the time the job description was provided to Dr. Vohra, Tyson employed a private security firm which maintained two guards on duty at all times. This private security firm was eventually eliminated, and Tyson maintained only one security guard per shift.
¶ 10. By contrast, the job description provided to Dr. Vohra provided that, as a security guard, Caston would be required to “walk for approximately 10 minutes every hour to make rounds, open and close the front gate by pushing a button, check all incoming vehicles for parking decals on the windshield, sign visitors in, answer the phone and complete required paper work.” A more detailed list of job requirements was also furnished to Dr. Vohra which provided as follows:
1. Patrol exterior, interior of plant and surrounding grounds, rounds should be made every hour, check for possible criminal activity, inoperative lighting, fire hazards, fire extinguishers, loitering employees or outside persons inside or outside of plant, violations of company policies.
2. Maintain visual surveillance of all cars on company property.
3. Completely and neatly fill out Truck Log sheet on all incoming/ outgoing trucks.
4. Record temperatures of trucks exiting the property.
5. Receive phone calls and report messages to Supervisor, Nurse Station, or Personnel.
*1055 6. Make written incident reports as needed. It is the duty and responsibility of the guard to record any known violation of the company policy or regulations on his daily report.
7. Make sure team members entering premises have proper identification and parking pass.
8. Log all incoming visitors, no vehicle will be permitted on company property unless they can prove to security that they have business with vehicle behind the gate.
9. Must check seals on trucks.
10. Maintain the guard office in a neat and orderly condition at all times.
11. Maintain confidentiality.
12. Be SAFETY CONSCIOUS.
¶ 11. The Commission held that even a cursory comparison of the two job descriptions shows how plainly misleading the description provided to Dr. Vohra was. The Commission further held that regardless of the differences between the two descriptions, it could not see how any person performing the job requirements of security guard could possibly comply without standing more than four hours over the course of an eight hour day. Lastly, the Commission found that based on Ca-ston’s age, education, prior experience and current physical condition, the wages he earned while working part time were representative of his true earning capacity and that he should be compensated accordingly.
¶ 12. The Commission reversed the administrative law judge’s award of permanent disability benefits to Caston and ordered instead that Tyson pay permanent partial disability in the amount of $161.71 per week for a period of four hundred fifty weeks, commencing January 16, 1998. In all other respects, the order of the administrative law judge was affirmed.
ANALYSIS OF ISSUES PRESENTED
¶ 13. Tyson charges that the Commission’s and the circuit court’s finding, that Caston’s job as a part-time sorter was more indicative of his current wage-earning capacity, is not supported by the evidence. Tyson alleges separately that the measure of Caston’s loss of wage-earning capacity should have been based on Tyson’s position as a security guard. These issues are interrelated and will be joined for purposes of this discussion.
¶ 14. As the ultimate finder of fact, the Commission’s findings are subject to normal, deferential standards on appellate review. Natchez Equip. Co., Inc. v. Gibbs, 623 So.2d 270, 273 (Miss.1993). We must presume that the Commission’s determinations as to which evidence was credible, and had weight, and which did not, were proper. Metal Trims Indus., Inc. v. Stovall, 562 So.2d 1293, 1297 (Miss.1990). This Court is bound by findings of fact made by the full Commission provided they are supported by substantial evidence. Vance v. Twin River Homes, Inc., 641 So.2d 1176, 1180 (Miss.1994). The Commission’s decision will only be reversed when the decision is erroneous and contrary to the weight of the evidence. Id.
¶ 15. After a careful review of the record we cannot say that the Commission’s decision is erroneous and contrary to the weight of the evidence; therefore, we are bound to, and do affirm that decision.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY AFFIRMING THE DECISION OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
*1056 McMILLIN, C.J., KING and SOUTHWICK, P.JJ., PAYNE, BRIDGES, THOMAS, MYERS and CHANDLER, JJ., concur.
LEE, J., not participating.